# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 5469 | **DATE** | 8/21/2011 |
| **CASE TITLE** | Soppet, et al. vs. Enhanced Recovery Co. | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, the Court denies ERC's motion for summary judgment [docket no. 50]. A status hearing is set for September 6, 2011 at 9:30 a.m. for the purpose of setting a schedule for any further proceedings in this case, and to discuss the possibility of settlement.

■[ For further details see text below.] Docketing to mail notices.

## STATEMENT

Teresa Soppet and Loidy Tang have sued Enhanced Recovery Company, LLC (ERC) under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227(b)(1)(A)(iii). ERC has moved for summary judgment. For this reason, the Court views the facts in the light most favorable to plaintiffs and draws reasonable inferences in their favor.

Facts

AT&T retained ERC, a debt collection company, to collect debts owed by Dupree Riley and Sherita Morgan. When Riley opened her account with AT&T in July 2005, he gave AT&T the telephone number 708-xxx-2583 as a contact number. When Morgan opened her AT&T account in October 2006, she gave AT&T the telephone number 708-xxx-8483 as a contact number. AT&T provided these numbers to ERC when it retained ERC to collect the debts.

Since February 2007, Soppet has had cell phone with the number 708-xxx-2583. ERC called that number twenty-four times from January through September 2010 using an automated or predictive dialing system and left prerecorded messages each time. The messages were for Riley. It is clear from the contents of the prerecorded messages that ERC was trying to reach Riley. The messages advised that the recipient should delete the message if she was not Riley. Soppet's voice mail greeting informed callers that they had reached Teresa Soppet. This did not deter ERC from continuing to call the number. Soppet did not contact ERC to ask it to stop calling her number.

Tang has had the cell phone number 708-xxx-8483 since January 2007. She alleges that ERC called that number at least fifteen times from October 2009 through September 2010, using an automatic telephone dialing system. It is clear from the prerecorded messages that ERC left that it was trying to reach Morgan. A

**STATEMENT**

number of the messages advised the recipient to delete the messages if she was not Morgan. Until about June 2010, Tang had a voice mail greeting informing callers they had reached Loidy Tang. This did not deter ERC from continuing to call the number. Tang says that in September 2010, she contacted ERC and requested that it stop calling her number for Morgan. ERC did not call Tang after that request.

Discussion

The TCPA provides, in relevant part, that

> [i]t shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service.

47 U.S.C. § 227(b)(1). The statute defines an "automatic telephone dialing system" as "equipment which has the capacity to store or produce telephone number to be called, using a random or sequential number generator, and to dial such numbers." *Id*. § 227(a)(1).

ERC's first argument is that Soppet and Tang were not the "called parties" or the intended recipients of the call and that for this reason they lack standing to sue under section 227(b)(1). The Court disagrees and, in this regard, adopts the discussion of this point by its colleagues Judge Charles Kocoras and Chief Judge James Holderman. *See Tang v. Medical Recovery Specialists, LLC*, No. 11 C 2109, slip op. at 3 (N.D. Ill. July 7, 2011); *D.G. ex rel. Tang v. William W. Siegel & Assocs.*, No. 11 C 599, 2011 WL 2356390, at *2 (N.D. Ill. June 14, 2011). To put it in a nutshell, the statutory term "called party" is in the statute as part of a consent defense, not as a limitation on who may sue for a violation of the statute. The plain language of section 227(b)(1) makes it clear that the "recipient" of a call violative of that provision may sue – not merely, as ERC argues, the "intended recipient." Soppet and Tang were the recipients of the calls at issue in this case.

ERC's second argument is that it had the consent of the parties it intended to call – Riley and Morgan – and that Soppet and Tang have no viable claim even though they were the actual recipients of the calls. As noted above, section 227(b)(1) contains an exception to liability for calls "made with the prior express consent of the called party." ERC contends that the "called party" is the party that the caller intended to call; Soppet and Tang contend that the "called party" is the actual recipient. The Court assumes for purposes of this discussion that the consent that Riley had provided four-plus years before ERC first called Soppet and the consent that Morgan had provided three years before ERC first called Tang qualifies under section 227(b)(1) even absent evidence that ERC had done anything to attempt to confirm that Riley and Morgan still had those phone numbers.

Section 227 contains no express definition of the term "called party." Section 227(b)(1) uses the term "recipient" in referring to statutory coverage of calls made from outside the United States to persons within the United States. One might infer from this that the term "called party," used later in section 227(b)(1), means something other than "recipient." But the usage of "called party" in section 227(b)(1) and the remainder of section 227 makes it clear, in the Court's view, that the "called party" is the party that the caller actually calls – in other words, the actual recipient of the call. In particular, section 227(d), which concerns the establishment of technical and procedural standards for facsimile machines and automated telephone dialing systems, provides among other things that

**STATEMENT**

> [t]he Commission shall prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone. Such standards shall require that--
>
> (A) all artificial or prerecorded telephone messages (i) shall, at the beginning of the message, state clearly the identity of the business, individual, or other entity initiating the call, and (ii) shall, during or after the message, state clearly the telephone number or address of such business, other entity, or individual; and
>
> (B) any such system will automatically release *the called party's line* within 5 seconds of the time notification is transmitted to the system that the called party has hung up, to allow *the called party's line* to be used to make or receive other calls.

47 U.S.C. § 227(d)(3). This statutory usage of "called party" is a clear reference to the actual recipient of a call – it requires establishment of a standard that will release the call recipient's line under particular circumstances.

The law presumes that "Congress intended the same terms used in different parts of the same statute to have the same meaning," *Perry v. First Nat'l Bank*, 459 F.3d 816, 820-21 (7th Cir. 2006), and there is nothing here to rebut the presumption. The Court concludes that the term "called party" in section 227(b)(1) refers to the actual recipient of a call, just as it does in section 227(d)(3). As a result, Soppet and Tang are the "called parties" with regard to the calls at issue in this case. Because there is no evidence that they expressly consented to receive calls from ERC, ERC is not entitled to the benefit of section 227(b)(1)'s exception to liability.

For these reasons, the Court denies ERC's motion for summary judgment [docket no. 50]. A status hearing is set for September 6, 2011 at 9:30 a.m. for the purpose of setting a schedule for any further proceedings in this case, and to discuss the possibility of settlement.