IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TERESA SOPPET, LOIDY TANG, individually and on behalf of a class, | ) ) ) | |
| Plaintiffs, | ) ) | 10-cv-5469 |
| vs. | ) ) | Judge Kennelly |
| ENHANCED RECOVERY COMPANY, LLC, as successor to ENHANCED RECOVERY CORPORATION and ILLINOIS BELL TELEPHONE COMPANY d/b/a AT&T ILLINOIS, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**FIRST AMENDED CONSOLIDATED COMPLAINT – CLASS ACTION**

**MATTERS COMMON TO MULTIPLE CLAIMS**

**INTRODUCTION**

1. Plaintiffs Teresa Soppet and Loidy Tang (collectively "Plaintiffs") bring this action to secure redress from unlawful credit and collection practices engaged in by defendant Enhanced Recovery Company, LLC, as successor to Enhanced Recovery Corporation ("ERC") and Illinois Bell Telephone Company d/b/a AT&T Illinois. Plaintiffs allege violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

2. The TCPA restricts the use of automated telephone equipment to dial and leave pre-recorded messages on cellular telephones.

**VENUE AND JURISDICTION**

3. This Court has jurisdiction under 28 U.S.C. §§1331, 1337 and 1367.

4. Venue and personal jurisdiction in this District are proper because:

1

      a.      Plaintiffs reside in this District;

      b.      ERC's collection communications were received by Plaintiffs within this District;

      c.      ERC transacts business within this District.

## PARTIES

5.     Plaintiff Teresa Soppet is an individual who resides in the Northern District of Illinois.

6.     Plaintiff Loidy Tang is an individual who resides in the Northern District of Illinois.

7.     ERC is a Delaware corporation with an office at 1422 E. 71st Street, Tulsa, Oklahoma 74136. It does business in Illinois. Its registered agent and office are LexisNexis Document Solutions, 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

8.     ERC is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9.     Illinois Bell Telephone Company d/b/a AT&T Illinois ("AT&T Illinois") is an Illinois corporation with an office at 225 West Randolph St., #Z1, Chicago, Illinois 60606. It does business in Illinois. Its registered agent and office are CT Corporation System, 208 South LaSalle St., Chicago, Illinois 60604.

## FACTS RELATING TO PLAINTIFF SOPPET

10.    Ms. Soppet has had a cellular telephone with an assigned telephone number ending in 2583 since at least 2007.

11.    In August 2009, AT&T Illinois placed an account owed by Dupree Riley

2

with ERC to collect.

12. Between January 29, 2010 and September 15, 2010, ERC attempted to collect the Dupree Riley account on behalf of Defendant AT&T.

13. Between January 29, 2010 and September 15, 2010, ERC telephoned the 2583 number on 18 occasions using an automated telephone dialing system and left 18 pre-recorded messages in Ms. Soppet's voice mailbox.

14. The messages stated as follows:

> **Hello this message is for Dupree Riley, if you're not this person delete this message as this is not for you. This is Chelsey with Enhanced Recovery Corporation, we are a collection agency attempting to collect a debt and any information obtained will be used to that purpose. Please contact me about this business matter at 800-496-8916 and provide the following reference number 21396266, goodbye.**

15. Ms. Soppet is not acquainted with anyone named Dupree Riley.

16. The portion of the prerecorded message stating, "If you're not this person delete this message as it is not for you" was a command that ERC intended Ms. Soppet to hear.

17. ERC also intended Ms. Soppet to hear the disclosure that "We are a collection agency attempting to collect a debt and any information obtained will be used for that purpose."

18. Prior to receiving calls from ERC, Ms. Soppet had had no contact or communications with ERC.

19. The telephone number 800-496-8916 is a number used by ERC.

20. ERC intended to reach a person with a telephone number identical to that of Ms. Soppet.

3

21. ERC's calls to Ms. Soppet were initiated by an autodialer or a predictive dialer.

22. An autodialer or a predictive dialer places calls without human intervention until a person answers the call, in which case the dialer attempts to connect the person answering the call with a human debt collector.

23. Between January 29, 2010 and September 15, 2010, Ms. Soppet's outgoing voice mail greeting played when she did not answer a call.

24. Between January 29, 2010 and September 15, 2010, Ms. Soppet's outgoing voice mail greeting stated: "Hi this is Teresa, sorry I missed your call. Leave me a message and I'll call you back."

25. Ms. Soppet did not authorize the automated placement of calls to her cellular telephone.

26. Ms. Soppet did not furnish her cellular telephone number to ERC.

## FACTS RELATING TO PLAINTIFF TANG

27. Ms. Tang has a cellular telephone assigned the telephone number XXX-XXX-8483. The first seven digits of Ms. Tang's cellular telephone number are redacted herein due to privacy considerations.

28. In August 2009, Defendant AT&T Illinois placed an account owed by Sherita Morgan with ERC to collect.

29. ERC attempted to collect the Sherita Morgan account on behalf of Defendant AT&T Illinois.

30. ERC telephoned the Ms. Tang's 8483 number on 29 occasions using an

4

automated telephone dialing system and left 29 pre-recorded messages in Ms. Tang's voice mailbox.

31. ERC intended to call XXX-XXX-8384.

32. ERC intended to reach a person whose telephone number corresponded with XXX-XXX-8384.

33. Ms. Tang received on her cellular telephone several prerecorded messages in the form as follows:

> **Hello this message is for, (Pause – Different Voice) <u>Sherita Morgan</u> (Phonetic). If you are not this person please delete this message as it is not for you. This is Chelsea with Enhanced Recovery Company. We are a collection agency attempting to collect a debt and any information obtained will be used for that purpose. Please contact me about this business matter at (Pause – Different Voice) <u>800-496-8916</u> and provide the following reference number (Pause – Different Voice) <u>21430910</u>.**

34. The pauses with the different voice noted above and the underlined text is text-to-speech customization that inserts, in part, the person's name of whom ERC was trying to reach into the form prerecorded message and a reference number ERC has assigned to that person's account. Ms. Tang has no relationship with ERC, and does not know who Sherita Morgan is.

35. The portion of the prerecorded message stating, "If you are not this person please delete this message as it is not for you" was a command that ERC intended Ms. Tang to hear.

36. ERC also intended Ms. Tang to hear the information disclosure required by 15 U.S.C. 1692d(6) which must be left for both debtors and non-debtors, "We are a collection

agency attempting to collect a debt and any information obtained will be used for that purpose."

37. The telephone number 800-496-8916 is a number used by ERC.

38. ERC placed, and Ms. Tang received, the prerecorded voice message described above from ERC on her cellular telephone on or about:

    a. September 28, 2010 at 11:57 a.m.;

    b. September 3, 2010 at 10:54 a.m.;

    c. July 9, 2010, at 11:03 a.m.; and

    d. June 28, 2010, at 10:03 a.m.

39. Each phone call above was placed with an autodialer that dialed Ms. Tang's cellular telephone number without a human hand.

40. ERC has placed other calls to Ms. Tang's cellular telephone number using an autodialer and has made other calls and left other prerecorded messages which should appear in ERC's collection notes, telephone records or dialer records regarding its reference number 21430910.

41. From a time period up to on or about June 2010, Ms. Tang's voice message informed a caller that they had reached Loidy's voice mail.

42. ERC placed calls with its predictive dialer to Ms. Tang prior to June 2010.

43. Ms. Tang's pre-June 2010 voice message placed ERC on notice that it was calling the wrong person.

44. On or about September 29, 2010, Ms. Tang called ERC at the 800-496-8916 telephone number. ERC received this telephone call.

45. Upon calling the 800-496-8916 telephone number a prerecorded message

6

prompts the caller that if the caller would like to report a wrong number to please press 1.

46. Pressing 1, ERC's automated answering machine prompts the caller to input their 10-digit telephone number.

47. After entering the 10-digit phone number the call is transferred to a live person.

48. Ms. Tang followed ERC's automated answering machine prompts and reported that the telephone number ERC was calling was the wrong number.

49. On information and belief, ERC places numerous calls to cellular telephone numbers using its predictive dialer where the telephone number is not that of the debtor whose name is inserted in the form prerecorded message.

50. On or before February 6, 2010 until on or approximately June 2010, Plaintiff Tangs outgoing voice message greeting played when she did not answer her cell phone before it went to voice mail, informed the caller that the caller had reached Loidy.

51. Defendant ERC left 29 voice messages in total to Plaintiff Tang.

52. On information and belief, ERC places numerous calls to cellular telephone numbers using its predictive dialer where the telephone number is not that of the debtor whose name is inserted in the form prerecorded message.

53. Plaintiffs and each class member are entitled to statutory damages.

54. ERC violated the TCPA even if its actions were only negligent.

55. ERC should be enjoined from committing similar violations in the future.

56. AT&T Illinois is liable for the actions of ERC because ERC's calls to

Plaintiffs were made on behalf of AT&T Illinois. *In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559 ¶ 10.)

### COUNT I – TCPA

57. Plaintiffs incorporate paragraphs 1-56.

58. The TCPA, 47 U.S.C. §227, provides:

**§ 227. Restrictions on use of telephone equipment**

**. . . (b) Restrictions on use of automated telephone equipment.**

**(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States–**

>**(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice–**
>
>>**(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; . . .**

59. The TCPA, 47 U.S.C. §227(b)(3), further provides:

**Private right of action.**

**A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**

>**(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**
>
>**(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or**
>
>**(C) both such actions.**

> **If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

60. Under the TCPA, Plaintiffs are the "called party".

61. Under the TCPA, Plaintiffs are "person[s]" seeking the private right of action under 47 U.S.C. § 227(b)(3).

62. ERC's phone calls to Plaintiffs' and class members' cellular telephones using automatic telephone dialing systems and/or artificial or prerecorded voice without express prior consent of the called party violated the TCPA.

## CLASS ALLEGATIONS

63. Plaintiffs bring this class action pursuant to Fed.R.Civ.P. 23(a) and (b)(2) seeking declaratory and injunctive relief to prohibit ERC from placing future telephone calls with an automatic telephone dialing service and/or an artificial or prerecorded voice to persons who did not provide prior express consent for their cellular telephone number to be called by ERC.

64. Plaintiffs also bring this claim on behalf of two classes and two sub-classes, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

65. The first class, or Class I, is defined as: (a) all natural persons with a cellular telephone number (b) who were called by ERC (c) using an automatic telephone dialing service and/or an artificial or prerecorded voice (d) where ERC's records do not show any express prior consent to call a person's cellular telephone number prior to the first call placed by the automatic telephone dialing service and/or an artificial or prerecorded voice (e) for a time

period beginning August 30, 2006 (four years prior to the date Plaintiff Soppet's original complaint was filed).

66. The first sub-class, or sub-class I, is defined as: (a) all natural persons with a cellular telephone number (b) that was called by ERC (c) using an automatic telephone dialing service and/or an artificial or prerecorded voice (d) where ERC's records do not show any express prior consent to call that person's cellular telephone number prior to the first call placed by the automatic telephone dialing service and/or an artificial or prerecorded voice (e) where ERC's records show that the person reported to ERC that the number it was calling was a wrong number (f) for a time period beginning October 12, 2006 (four years prior to the date Plaintiff Tang's original complaint was filed).

67. The second class, or Class II, is defined as: (a) all natural persons with a cellular telephone number (b) that were called by ERC to collect on an AT&T Illinois account (c) using an automatic telephone dialing service and/or an artificial or prerecorded voice (d) where ERC's records do not show any express prior consent to call that person's cellular telephone number prior to the first call placed by the automatic telephone dialing service and/or an artificial or prerecorded voice (e) for a time period beginning August 30, 2006 (four years prior to the date Plaintiff Tang's original complaint was filed).

68. The second sub-class, or sub-class II, is defined as: (a) all natural persons with a cellular telephone number (b) that were called by ERC to collect on an AT&T Illinois account (c) using an automatic telephone dialing service and/or an artificial or prerecorded voice (d) where ERC's records do not show any express prior consent to call that person's cellular telephone number prior to the first call placed by the automatic telephone dialing service and/or

an artificial or prerecorded voice (e) where ERC's records show that the person reported to ERC that the number it was calling was a wrong number (g) for a time period beginning October 12, 2006 (four years prior to the date Plaintiff Tang's original complaint was filed).

69. The classes are so numerous that joinder of all members is impractical. Plaintiffs allege on information and belief that there are more than 40 members of each class.

70. There are questions of law and fact common to the classes that predominate over any questions affecting only individual class members. The predominant common questions include:

   a. Whether ERC engaged in a pattern of using automated equipment to place calls to cellular telephones;

   b. The manner in which ERC obtained the cellular telephone numbers;

   c. Whether ERC and Illinois Bell thereby violated the TCPA; and

   d. Whether calling persons' cellular telephones with an automatic telephone dialing service and/or an artificial or prerecorded voice who are not the person who contracted for and is obligated to the underlying debt ERC was trying to collect violates the TCPA.

71. Plaintiffs' claims are typical of the claims of the class members' in that the alleged violations are all based on the lack of prior express consent.

72. Plaintiffs will fairly and adequately protect the interests of the classes. Plaintiffs have retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiffs nor Plaintiffs' counsel have any interests which

might cause them not to vigorously pursue this action.

73. A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against ERC is small because it is not economically feasible to bring individual actions and class members may be unaware that their rights have been violated.

74. Several courts have certified class actions under the TCPA. Two courts in this District recently certified classes in TCPA cases involving autodialed calls to cellular telephones without the express prior consent of the recipient. Balbarin v. North Star Capital Acquisition, LLC, 2010 C 1846, 2011 U.S. Dist. LEXIS 686 (N.D. Ill. Jan. 5, 2011); Mitchem v. Illinois Collection Service, 2009 C 7274, 2011 U.S. Dist. LEXIS 714 (N.D. Ill. Jan. 3, 2011).

75. Other courts have also certified classes in TCPA cases. Sadowski v. Med1 Online, LLC, 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); Hinman v. M & M Rental Ctr., 06 C 1156, 2008 U.S. Dist. LEXIS 27835 (N.D.Ill., April 7, 2008); Kavu, Inc. v. Omnipak Corp., 246 F.R.D. 642 (W.D.Wash. 2007); Gortho, Ltd., v. Websolv, 03 CH 15615 (Cir. Ct. Cook Co., March 6, 2008); Travel 100 Group, Inc. v. Empire Cooler Service, Inc., 03 CH 14510, 2004 WL 3105679 (Cook Co. Cir. Ct., Oct. 19, 2004); Rawson v. C.P. Partners LLC, 03 CH 14510 (Cook Co. Cir. Ct., Sept. 30, 2005); Lampkin v. GGH, Inc., 146 P.3d 847 (Okla. Ct. App. 2006); Display South, Inc. v. Express Computer Supply, Inc., 961 So.2d 451, 455 (La. App. 1st Cir. 2007); Display South, Inc. v. Graphics House Sports Promotions, Inc., 992 So. 2d 510 (La. App. 1st Cir. 2008); ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc., 203 Ariz. (App.) 94, 50 P.3d 844 (2002); Core Funding Group, LLC v. Young, 792 N.E.2d 547 (Ind.App. 2003); Nicholson v. Hooters of Augusta, Inc.,

245 Ga.App. 363, 537 S.E.2d 468 (2000) (private class actions).

76. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the classes and against ERC and AT&T Illinois for:

    (1)  Statutory damages;

    (2)  An injunction against further violations, along with corresponding declaratory relief;

    (3)  Costs of suit;

    (4)  Such other or further relief as the Court deems just and proper.

        s/Daniel A. Edelman
        Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER
 & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

Curtis C. Warner
WARNER LAW FIRM, LLC
Millenium Park Plaza
155 N. Michigan Ave., Suite 9005
Chicago, IL 60601
(312) 238-9820
(312) 638-9139 (FAX)

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

                                              s/Daniel A.Edelman
                                              Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)