## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| TERESA SOPPET and LOIDY TANG, | ) | |
| individually and on behalf of a class, | ) | |
| | ) | |
| Plaintiffs, | ) | 10-cv-5469 |
| | ) | |
| vs. | ) | Judge Kennelly |
| | ) | |
| ENHANCED RECOVERY COMPANY, | ) | |
| LLC, and ILLINOIS BELL TELEPHONE | ) | |
| COMPANY d/b/a AT&T ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

## ENHANCED RECOVERY COMPANY, LLC'S ANSWER TO
## FIRST AMENDED CONSOLIDATED COMPLAINT

1.      Plaintiffs Teresa Soppet and Loidy Tang (collectively "Plaintiffs") bring this action to secure redress from unlawful credit and collection practices engaged in by defendant Enhanced Recovery Company, LLC, as successor to Enhanced Recovery Corporation ("ERC") and Illinois Bell Telephone Company d/b/a AT&T Illinois. Plaintiffs allege violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

**Answer:       ERC admits that plaintiffs purport to bring a claim under the Telephone Consumer Protection Act (TCPA), but denies any wrongdoing, violations or liability under the law.**

1

2.     The TCPA restricts the use of automated telephone equipment to dial and leave pre-recorded messages on cellular telephones.

**Answer:     ERC denies the allegations in ¶ 2 as an incomplete statement of the law.**

## VENUE AND JURISDICTION

3.     This Court has jurisdiction under 28 U.S.C. §§1331, 1337 and 1367.

**Answer:     ERC admits the allegations in ¶ 3.**

4.     Venue and personal jurisdiction in this District are proper because:

    a.     Plaintiffs reside in this District;

    b.     ERC's collection communications were received by Plaintiffs within this District;

    c.     ERC transacts business within this District.

**Answer:     Upon information and belief, ERC admits the allegations of ¶ 4 for venue and jurisdictional purposes only.**

## PARTIES

5.     Plaintiff Teresa Soppet is an individual who resides in the Northern District of Illinois.

**Answer:     ERC admits the allegations in ¶ 5 upon information and belief.**

6.     Plaintiff Loidy Tang is an individual who resides in the Northern District of Illinois.

**Answer:     ERC admits the allegations in ¶ 6 upon information and belief.**

2

7. ERC is a Delaware corporation with an office at 1422 E. 71st Street, Tulsa, Oklahoma 74136. It does business in Illinois. Its registered agent and office are LexisNexis Document Solutions, 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

**Answer:** **ERC admits that it is a Delaware corporation with a registered agent in Illinois as described. Except as specifically admitted, ERC denies the allegations in ¶ 7.**

8. ERC is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

**Answer:** **ERC admits only that a part of its business involves the collection of debts originally owed to others through the mail and telephones. Except as specifically admitted, ERC denies the allegations in ¶ 8.**

9. Illinois Bell Telephone Company d/b/a AT&T Illinois ("AT&T Illinois") is an Illinois corporation with an office at 225 West Randolph St., #Z1, Chicago, Illinois 60606. It does business in Illinois. Its registered agent and office are CT Corporation System, 208 South LaSalle St., Suite 814, Chicago, Illinois 60604.

**Answer:** **ERC denies the allegations in ¶ 9 for lack of knowledge or information sufficient to form a belief therein.**

## FACTS RELATING TO PLAINTIFF SOPPET

10. Ms. Soppet has had a cellular telephone with an assigned telephone number ending in 2583 since at least 2007.

**Answer:** **ERC denies the allegations in ¶ 10 for lack of knowledge or**

3

**information sufficient to form a belief therein.**

11.    In August 2009, AT&T Illinois placed an account owed by Dupree Riley with ERC to collect.

**Answer:      ERC admits only that AT&T placed an account owed by Dupree Riley with it for collection in August, 2009.  Except as specifically admitted, ERC denies the allegations in ¶ 11.**

12.    Between January 29, 2010 and September 15, 2010, ERC attempted to collect the Dupree Riley account on behalf of Defendant AT&T Illinois.

**Answer:      ERC admits only that AT&T placed an account owed by Dupree Riley with it for collection.  Except as specifically admitted, ERC denies the allegations in ¶ 12.**

13.    Between January 29, 2010 and September 15, 2010, ERC telephoned the 2583 number on 18 occasions using an automated telephone dialing system and left 18 prerecorded messages in Ms. Soppet's voice mailbox.

**Answer:      ERC denies the allegations in ¶ 13.**

14.    The messages stated as follows:

> **Hello this message is for Dupree Riley, if you're not this person delete this message as this is not for you. This is Chelsey with Enhanced Recovery Corporation, we are a collection agency attempting to collect a debt and any information obtained will be used to that purpose. Please contact me about this business matter at 800-496-8916 and provide the following reference number 21396266, goodbye.**

**Answer:      ERC admits that its records reflect that a message was left for**

4

Dupree Riley. **Except as specifically admitted, ERC denies the allegations in ¶ 14.**

15.     Ms. Soppet is not acquainted with anyone named Dupree Riley.

**Answer:** **ERC denies the allegations in ¶ 15 for lack of knowledge or information sufficient to form a belief therein.**

16.     The portion of the prerecorded message stating, "If you're not this person delete this message as it is not for you" was a command that ERC intended Ms. Soppet to hear.

**Answer:** **ERC denies the allegations in ¶ 16.**

17.     ERC also intended Ms. Soppet to hear the disclosure that "We are a collection agency attempting to collect a debt and any information obtained will be used for that purpose."

**Answer:** **ERC denies the allegations in ¶ 17.**

18.     Prior to receiving calls from ERC, Ms. Soppet had had no contact or communications with ERC.

**Answer:** **ERC denies the allegations in ¶ 18 for lack of knowledge or information sufficient to form a belief therein.**

19.     The telephone number 800-496-8916 is a number used by ERC.

**Answer:** **ERC admits the allegations in ¶ 19 upon information and belief.**

20.     ERC intended to reach a person with a telephone number identical to that of Ms. Soppet.

**Answer:** **ERC denies the allegations in ¶ 20.**

5

21.     ERC's calls to Ms. Soppet were initiated by an autodialer or a predictive dialer.

**Answer:     ERC denies the allegations in ¶ 21.**

22.     An autodialer or a predictive dialer places calls without human intervention until a person answers the call, in which case the dialer attempts to connect the person answering the call with a human debt collector.

**Answer:     ERC denies the allegations in ¶ 22 for lack of knowledge or information sufficient to form a belief therein.**

23.     Between January 29, 2010 and September 15, 2010, Ms. Soppet's outgoing voice mail greeting played when she did not answer a call.

**Answer:     ERC denies the allegations in ¶ 23 for lack of knowledge or information sufficient to form a belief therein.**

24.     Between January 29, 2010 and September 15, 2010, Ms. Soppet's outgoing voice mail greeting stated: "Hi this is Teresa, sorry I missed your call. Leave me a message and I'll call you back."

**Answer:     ERC denies the allegations in ¶ 24 for lack of knowledge or information sufficient to form a belief therein.**

25.     Ms. Soppet did not authorize the automated placement of calls to her cellular telephone.

**Answer:     ERC denies the allegations in ¶ 25 for lack of knowledge or information sufficient to form a belief therein.**

26.     Ms. Soppet did not furnish her cellular telephone number to ERC.

**Answer:     ERC admits the allegations in ¶ 26 based on information and belief.**

## FACTS RELATING TO PLAINTIFF TANG

27.     Ms. Tang has a cellular telephone assigned the telephone number XXX-XXX-8483. The first seven digits of Ms. Tang's cellular telephone number are redacted herein due to privacy considerations.

**Answer:     ERC denies the allegations in ¶ 27 for lack of knowledge or information sufficient to form a belief therein.**

28.     In August 2009, Defendant AT&T Illinois placed an account owed by Sherita Morgan with ERC to collect.

**Answer:     ERC admits only that its records reflect that an account owed by Sherita Morgan was placed for collection by AT&T with ERC in August, 2009. Except as specifically admitted, ERC denies the allegations in ¶ 28.**

29.     ERC attempted to collect the Sherita Morgan account on behalf of Defendant AT&T Illinois.

**Answer:     ERC admits only that its records reflect that an account owed by Sherita Morgan was placed for collection by AT&T with ERC.     Except as specifically admitted, ERC denies the allegations in ¶ 29.**

30.     ERC telephoned the Ms. Tang's 8483 number on 29 occasions using an automated telephone dialing system and left 29 pre-recorded messages in Ms. Tang's

7

voice mailbox.

**Answer:** **ERC denies the allegations in ¶ 30.**

31.    ERC intended to call XXX-XXX-8384.

**Answer:** **ERC admits only that its records reflect that it called the 8384 number.  Except as specifically admitted, ERC denies the allegations in ¶ 31.**

32.    ERC intended to reach a person whose telephone number corresponded with XXX-XXX-8384.

**Answer:** **ERC denies the allegations in ¶ 32.**

33.    Ms. Tang received on her cellular telephone several prerecorded messages in the form as follows:

> Hello this message is for, (Pause – Different Voice) Sherita  Morgan (Phonetic). If you are not this person please delete this message as it is not for you. This is Chelsea with Enhanced Recovery Company. We are a collection agency attempting to collect a debt and any information obtained will be used for that purpose. Please contact me about this business matter at (Pause – Different Voice) 800-496-8916 and provide the following reference number (Pause – Different Voice) 21430910.

**Answer:** **ERC denies the allegations in ¶ 33.**

34.    The pauses with the different voice noted above and the underlined text is text-to-speech customization that inserts, in part, the person's name of whom ERC was trying to reach into the form prerecorded message and a reference number ERC has assigned to that person's account. Ms. Tang has no relationship with ERC, and does not know who Sherita Morgan is.

**Answer:** **ERC denies the allegations in ¶ 34 for lack of knowledge or**

information sufficient to form a belief therein.

35.     The portion of the prerecorded message stating, "If you are not this person please delete this message as it is not for you" was a command that ERC intended Ms. Tang to hear.

**Answer:**     **ERC denies the allegations in ¶ 35.**

36.     ERC also intended Ms. Tang to hear the information disclosure required by 15 U.S.C. 1692d(6) which must be left for both debtors and non-debtors, "We are a collection agency attempting to collect a debt and any information obtained will be used for that purpose."

**Answer:**     **ERC denies the allegations in ¶ 36.**

37.     The telephone number 800-496-8916 is a number used by ERC.

**Answer:**     **ERC admits the allegations in ¶ 37 upon information and belief.**

38.     ERC placed, and Ms. Tang received, the prerecorded voice message described above from ERC on her cellular telephone on or about:

   a.  September 28, 2010 at 11:57 a.m.;

   b.  September 3, 2010 at 10:54 a.m.;

   c.  July 9, 2010, at 11:03 a.m.; and

   d.  June 28, 2010, at 10:03 a.m.

**Answer:**     **ERC denies the allegations in ¶ 38.**

39.     Each phone call above was placed with an autodialer that dialed Ms. Tang's cellular telephone number without a human hand.

**Answer:** **ERC denies the allegations in ¶ 39.**

40.     ERC has placed other calls to Ms. Tang's cellular telephone number using an autodialer and has made other calls and left other prerecorded messages which should appear in ERC ' s collection notes, telephone records or dialer records regarding its reference number 21430910.

**Answer:** **ERC denies the allegations in ¶ 40.**

41.     From a time period up to on or about June 2010, Ms. Tang's voice message informed a caller that they had reached Loidy's voice mail.

**Answer:** **ERC denies the allegations in ¶ 41 for lack of knowledge or information sufficient to form a belief therein.**

42.     ERC placed calls with its predictive dialer to Ms. Tang prior to June 2010.

**Answer:** **ERC denies the allegations in ¶ 42.**

43.     Ms. Tang's pre-June 2010 voice message placed ERC on notice that it was calling the wrong person.

**Answer:** **ERC denies the allegations in ¶ 43.**

44.     On or about September 29, 2010, Ms. Tang called ERC at the 800-496-8916 telephone number. ERC received this telephone call.

**Answer:** **ERC denies the allegations in ¶ 44 for lack of knowledge or information sufficient to form a belief therein.**

45.     Upon calling the 800-496-8916 telephone number a prerecorded message prompts the caller that if the caller would like to report a wrong number to please press 1.

**Answer:** **ERC admits only that a caller can report a wrong number when calling ERC. Except as specifically admitted, ERC denies the allegations in ¶ 45.**

46. Pressing 1, ERC 's automated answering machine prompts the caller to input their 10-digit telephone number.

**Answer:** **ERC admits the allegations in ¶ 46 upon information and belief.**

47. After entering the 10-digit phone number the call is transferred to a live person.

**Answer:** **ERC admits the allegations in ¶ 47.**

48. Ms. Tang followed ERC's automated answering machine prompts and reported that the telephone number ERC was calling was the wrong number.

**Answer:** **ERC admits the allegations in ¶ 48 upon information and belief.**

49. On or before February 6, 2010 until on or approximately June 2010, Plaintiff Tang's outgoing voice message greeting played when she did not answer her cell phone before it went to voice mail, informed the caller that the caller had reached Loidy.

**Answer:** **ERC denies the allegations in ¶ 49 for lack of knowledge or information sufficient to form a belief therein.**

50. Defendant ERC left 29 voice messages in total to Plaintiff Tang.

**Answer:** **ERC denies leaving messages for Plaintiff Tang, and therefore denies the allegations in ¶ 50.**

51. On information and belief, ERC places numerous calls to cellular telephone numbers using its predictive dialer where the telephone number is not that of the debtor

whose name is inserted in the form prerecorded message.

**Answer:**     **ERC denies the allegations in ¶ 51.**

52.     Plaintiffs and each class member are entitled to statutory damages.

**Answer:**     **ERC denies the allegations in ¶ 52.**

53.     ERC violated the TCPA even if its actions were only negligent.

**Answer:**     **ERC denies the allegations in ¶ 53.**

54.     ERC should be enjoined from committing similar violations in the future.

**Answer:**     **ERC denies the allegations in ¶ 54.**

55.     AT&T Illinois is liable for the actions of ERC because ERC's calls to Plaintiffs were made on behalf of AT&T Illinois. In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Rcd. 559 ¶ 10.

**Answer:**     **ERC denies the allegations in ¶ 52.**

## COUNT I – TCPA

56.     Plaintiffs incorporate paragraphs 1-55.

**Answer:**     **ERC reasserts its foregoing answers in ¶ 1 - ¶ 55 as if fully stated herein.**

57.     The TCPA, 47 U.S.C. §227, provides:

**§ 227. Restrictions on use of telephone equipment**

**. . . (b) Restrictions on use of automated telephone equipment.**

> **(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States–**

12

**(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice–**

> **(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; . . .**

**Answer:**    ERC admits that plaintiffs have accurately quoted a portion of the TCPA, but denies any violations, wrongdoing or liability under the law.**

58.    The TCPA, 47 U.S.C. §227(b)(3), further provides:

**Private right of action.**

**A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**

> **(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**
> **(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or**
>
> **(C) both such actions.**

**If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal
to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

**Answer:**    ERC admits that plaintiffs have accurately quoted a portion of the TCPA, but denies any violations, wrongdoing or liability under the law.**

59.     Under the TCPA, Plaintiffs are the "called party".

**Answer:**     **ERC denies the allegations in ¶ 59.**

60.     Under the TCPA, Plaintiffs are "person[s]" seeking the private right of action under 47 U.S.C. § 227(b)(3).

**Answer:**     **ERC denies the allegations in ¶ 60.**

61.     ERC's phone calls to Plaintiffs' and class members' cellular telephones using automatic telephone dialing systems and/or artificial or prerecorded voice without express prior consent of the called party violated the TCPA.

**Answer:**     **ERC denies the allegations in ¶ 61.**

## CLASS ALLEGATIONS

62.     Plaintiffs bring this class action pursuant to Fed.R.Civ.P. 23(a) and (b)(2) seeking declaratory and injunctive relief to prohibit ERC from placing future telephone calls with an automatic telephone dialing service and/or an artificial or prerecorded voice to persons who did not provide prior express consent for their cellular telephone number to be called by ERC.

**Answer:**     **ERC admits only that plaintiffs purport to bring this as a class action, but denies that this case meets the requirements of Fed.R.Civ.P. 23.**

63.     Plaintiffs also bring this claim on behalf of two classes and two subclasses, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

**Answer:**     **ERC admits only that plaintiffs purport to bring this as a class action, but denies that this case meets the requirements of Fed.R.Civ.P. 23.**

14

64.     The first class, or Class I, is defined as: (a) all natural persons with a cellular telephone number (b) who were called by ERC (c) using an automatic telephone dialing service and/or an artificial or prerecorded voice (d) where ERC's records do not show any express prior consent to call a person's cellular telephone number prior to the first call placed by the automatic telephone dialing service and/or an artificial or prerecorded voice (e) for a time period beginning August 30, 2006 (four years prior to the date Plaintiff Soppet's original complaint was filed).

**Answer:**     **ERC denies the allegations in ¶ 64.**

65.     The first sub-class, or sub-class I, is defined as: (a) all natural persons with a cellular telephone number (b) that was called by ERC (c) using an automatic telephone dialing service and/or an artificial or prerecorded voice (d) where ERC's records do not show any express prior consent to call that person's cellular telephone number prior to the first call placed by the automatic telephone dialing service and/or an artificial or prerecorded voice (e) where ERC's records show that the person reported to ERC that the number it was calling was a wrong number (f) for a time period beginning October 12, 2006 (four years prior to the date Plaintiff Tang's original complaint was filed).

**Answer:**     **ERC denies the allegations in ¶ 65.**

66.     The second class, or Class II, is defined as: (a) all natural persons with a cellular telephone number (b) that were called by ERC to collect on an AT&T Illinois account (c) using an automatic telephone dialing service and/or an artificial or prerecorded voice (d) where ERC's records do not show any express prior consent to call

15

that person's cellular telephone number prior to the first call placed by the automatic telephone dialing service and/or an artificial or prerecorded voice (e) for a time period beginning August 30, 2006 (four years prior to the date Plaintiff Soppet's original complaint was filed).

**Answer:** **ERC denies the allegations in ¶ 66.**

67. The second sub-class, or sub-class II, is defined as: (a) all natural persons with a cellular telephone number (b) that were called by ERC to collect on an AT&T Illinois account (c) using an automatic telephone dialing service and/or an artificial or prerecorded voice (d) where ERC's records do not show any express prior consent to call that person's cellular telephone number prior to the first call placed by the automatic telephone dialing service and/or an artificial or prerecorded voice (e) where ERC's records show that the person reported to ERC that the number it was calling was a wrong number (g) for a time period beginning October 12, 2006 (four years prior to the date Plaintiff Tang's original complaint was filed).

**Answer:** **ERC denies the allegations in ¶ 67.**

68. The classes are so numerous that joinder of all members is impractical. Plaintiffs allege on information and belief that there are more than 40 members of each class.

**Answer:** **ERC denies the allegations in ¶ 68.**

69. There are questions of law and fact common to the classes that predominate over any questions affecting only individual class members. The

16

predominant common questions include:

a.   Whether ERC engaged in a pattern of using automated equipment to place calls to cellular telephones;

b.   The manner in which ERC obtained the cellular telephone numbers;

c.   Whether ERC and AT&T Illinois thereby violated the TCPA; and

d.   Whether calling persons' cellular telephones with an automatic telephone dialing service and/or an artificial or prerecorded voice who are not the person who contracted for and is obligated to the underlying debt ERC was trying to collect violates the TCPA.

> **Answer:**      **ERC denies the allegations in ¶ 69.**

70.   Plaintiffs' claims are typical of the claims of the class members' in that the alleged violations are all based on the lack of prior express consent.

> **Answer:**      **ERC denies the allegations in ¶ 70.**

71.   Plaintiffs will fairly and adequately protect the interests of the classes. Plaintiffs have retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiffs nor Plaintiffs' counsel have any interests which might cause them not to vigorously pursue this action.

> **Answer:**      **ERC denies the allegations in ¶ 71.**

72.   A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against ERC is small because it is not economically

feasible to bring individual actions and class members may be unaware that their rights have been violated.

**Answer:**     **ERC denies the allegations in ¶ 72.**

73     Several courts have certified class actions under the TCPA. Two courts in this District recently certified classes in TCPA cases involving autodialed calls to cellular telephones without the express prior consent of the recipient. Balbarin v. North Star Capital  Acquisition, LLC, 2010 C 1846, 2011 U.S. Dist. LEXIS 686 (N.D. Ill. Jan. 5, 2011); Mitchem v.  Illinois Collection Service, 2009 C 7274, 2011 U.S. Dist. LEXIS 714 (N.D. Ill. Jan. 3, 2011).

**Answer:**     **Paragraph 73 contains no allegations directed at ERC, and therefore no response is necessary.  To the extent an answer is required, ERC denies that a class should be certified in this case.**

74.     Other courts have also certified classes in TCPA cases. Sadowski v.  Med1 Online, LLC, 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); Hinman v. M & M Rental Ctr., 06 C 1156, 2008 U.S. Dist. LEXIS 27835 (N.D.Ill., April 7, 2008); Kavu,  Inc. v. Omnipak Corp., 246 F.R.D. 642 (W.D.Wash. 2007); Gortho, Ltd., v. Websolv, 03 CH 15615 (Cir. Ct. Cook Co., March 6, 2008); Travel 100 Group, Inc. v. Empire Cooler Service,  Inc., 03 CH 14510, 2004 WL 3105679 (Cook Co. Cir. Ct., Oct. 19, 2004); Rawson v. C.P.  Partners LLC, 03 CH 14510 (Cook Co. Cir. Ct., Sept. 30, 2005); Lampkin v. GGH, Inc., 146 P.3d 847 (Okla. Ct. App. 2006); Display South, Inc. v. Express Computer Supply, Inc., 961 So.2d 451, 455 (La. App. 1st Cir.

2007); Display South, Inc. v. Graphics House Sports Promotions, Inc., 992 So. 2d 510 (La. App. 1st Cir. 2008); ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc., 203 Ariz. (App.) 94, 50 P.3d 844 (2002); Core Funding Group, LLC v. Young, 792 N.E.2d 547 (Ind.App. 2003); Nicholson v. Hooters of Augusta, Inc., 245 Ga.App. 363, 537 S.E.2d 468 (2000) (private class actions).

**Answer:** **Paragraph 74 contains no allegations directed at ERC, and therefore no response is necessary. To the extent an answer is required, ERC denies that a class should be certified in this case.**

75. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

**Answer:** **ERC denies the allegations in ¶ 75.**

AND NOW, in further Answer to the Complaint, defendant ERC avers as follows:

## FIRST AFFIRMATIVE DEFENSE

One or more of the counts/grounds in plaintiffs' Complaint fails to state a claim against ERC upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

One or more of the telephone calls were not made to a wireless, i.e., cellular, telephone.

## THIRD AFFIRMATIVE DEFENSE

The phone calls made by ERC are exempt from TCPA liability under 47 U.S.C. §

227(b)(1)(B), 47 U.S.C.§ 227(b)(2)(b) and 47 C.F.R. § 64.1200(a).

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs fail in whole or in part to satisfy the requirements for a class action.

## FIFTH AFFIRMATIVE DEFENSE

This action should not be maintained as a class action because individual questions predominate over common questions of law and fact, and a class action is not superior to other available methods for the fair and efficient adjudication of the matter.

## SIXTH AFFIRMATIVE DEFENSE

One or more of the Counts contained in the Complaint are barred by the applicable statute of limitations.

## SEVENTH AFFIRMATIVE DEFENSE

The equipment used by ERC to make telephone calls is not covered by or subject to the TCPA.

## EIGHTH AFFIRMATIVE DEFENSE

Based upon the policies and procedures of ERC, to the extent ERC was calling plaintiffs on their cellular telephone, as alleged, ERC had consent to place those calls.

## NINTH AFFIRMATIVE DEFENSE

To the extent that plaintiffs were not the intended recipient of the calls, plaintiffs have no standing to assert the claim.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs acquiesced in and/or consented to the acts and omissions alleged in the

Complaint herein.

## ELEVENTH AFFIRMATIVE DEFENSE

If Plaintiffs suffered or sustained any loss, injury, damage or detriment, the same was directly and proximately caused and contributed to by the breach, conduct, acts, omissions, activities, carelessness, recklessness, negligence, and/or intentional misconduct of third parties, and not by ERC.

## TWELFTH AFFIRMATIVE DEFENSE

ERC has committed no act or omission causing damage to Plaintiffs.


WHEREFORE, Defendant Enhanced Recovery Company respectfully requests that this answer be deemed good and sufficient, Plaintiffs' lawsuit be dismissed, with prejudice, at Plaintiffs' costs, pursuant to Federal and State law, Plaintiffs be ordered to pay reasonable attorney's fees and costs for ERC, and for all other general and equitable relief.


Respectfully submitted,


/s/ James K. Schultz
Attorney for Defendant
Enhanced Recovery Company


James K. Schultz
SESSIONS, FISHMAN, NATHAN & ISRAEL, LLC
55 West Monroe St., Suite 1120
Chicago, IL  60603

Telephone:  (312) 578-0990
Facsimile:  (312) 578-0991
E-Mail:      jschultz@sessions-law.biz

Attorney for Defendant Enhanced Recovery Company

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on this 31st day of July, 2012, a copy of the foregoing **Enhanced Recovery Company, LLC's Answer To First Amended Consolidated Complaint** was filed electronically in the ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system, including Plaintiffs' counsel as described below. Parties may access this filing through the Court's system.

Francis R. Greene.
fgreene@edcombs.com

Curtis Warner
cwarner@warnerlawllc.com


/s/ James K. Schultz
Attorney for Defendant
Enhanced Recovery Company