**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TERESA SOPPET, LOIDY TANG, individually and on behalf of a class, <br><br> Plaintiffs, <br><br> v. <br><br> ENHANCED RECOVERY COMPANY, LLC, as successor to ENHANCED RECOVERY CORPORATION and ILLINOIS BELL TELEPHONE COMPANY d/b/a AT&T ILLINOIS, <br><br> Defendants. | ) ) ) ) ) ) Case No. 1:10-cv-5469 ) ) Hon. Matthew Kennelly ) ) ) ) ) ) ) ) |

**MOTION OF DEFENDANT ILLINOIS BELL TELEPHONE
COMPANY TO COMPEL ARBITRATION AND STAY ACTION**

Plaintiffs Teresa Soppet and Loidy Tang are Illinois customers of wireless telephone provider AT&T Mobility LLC ("AT&T Mobility"), which is an affiliate of defendant Illinois Bell Telephone Co. d/b/a AT&T Illinois ("AT&T Illinois"). In this lawsuit, plaintiffs allege that co-defendant Enhanced Recovery Company, LLC ("ERC") has improperly called them on their wireless phones in an effort to collect debts owed to AT&T Illinois by customers who previously were assigned the phone numbers at which Soppet and Tang currently receive AT&T Mobility wireless service. When Soppet and Tang's husband obtained wireless service from AT&T Mobility, they agreed that they (and any user on their account) would resolve any disputes that they (or users on their accounts) had with AT&T Mobility and its affiliates in arbitration.[1] The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, requires enforcing those arbitration agreements. Indeed, the Supreme Court recently held that the FAA required enforcement of a

---

[1] Under the arbitration agreement, plaintiffs may elect to proceed on an individual basis in small claims court as an alternative to arbitration. *See* page 6, *infra*.

materially equivalent version of AT&T Mobility's arbitration provision. *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1741 (2011).

## BACKGROUND

### A. Plaintiffs Sue AT&T Illinois Over Calls Made To Their Wireless Phones.

On July 16, 2012, Soppet and Tang filed a First Amended Complaint ("FAC") in which they added AT&T Illinois as a defendant in this action. Soppet and Tang allege that, in 2010, co-defendant ERC used an automated dialing machine to place calls to their wireless phones in an attempt to collect debts allegedly owed to AT&T Illinois by the customers who previously had been assigned the plaintiffs' phone numbers. FAC ¶¶ 12-40. Plaintiffs allege that ERC and AT&T Illinois thereby violated the Telephone Consumer Protection Act, 47 U.S.C. § 227. FAC ¶¶ 57-61. Plaintiffs request statutory damages, an injunction, and costs, and seek to represent two putative nationwide classes. *Id.* ¶¶ 63-67 & p. 13.

### B. Plaintiffs Agree To Individual Arbitration Of Disputes With AT&T Illinois.

Plaintiffs were previously deposed in this case by ERC. In those depositions, plaintiffs testified that they received calls from ERC on wireless phones with specific phone numbers. Decl. of James Schultz Ex. 1 at 7:6-9, 15:9-15 (Soppet); *id.* Ex. 2 at 13:3-15 (Tang). According to plaintiffs' deposition testimony, Soppet received wireless phone service from T-Mobile, and Tang received service from U.S. Cellular. *Id.* Ex. 1 at 29:3-4 (Soppet), Ex. 2 at 14:3-4 (Tang). Subsequently, AT&T Mobility's records reflect that Soppet and Tang's husband opened AT&T Mobility accounts with the same phone numbers (with the last four digits 2583 and 8483, respectively) that are the subject of plaintiffs' claims. Decl. of Chenell Cummings Decl. ¶ 3 & Ex. 1. The AT&T Mobility service agreements governing the accounts on which plaintiffs receive service require disputes between customers and AT&T Mobility and/or its affiliates to be resolved in arbitration. Decl. of Stacie Dobbs Ex. 2 § 2.2; Decl. of Melissa Probst Ex. 2 § 2.2.

**Teresa Soppet**

According to AT&T Mobility's records, on October 5, 2011, Soppet opened a new AT&T Mobility account when she purchased a RIM Blackberry Torch 9810 from an AT&T Mobility store in Crestview, Illinois and activated it for use on AT&T Mobility's network. Cummings Decl. ¶ 4. In doing so, she ported the phone number on which ERC allegedly had called her to AT&T Mobility. *Compare id.* Ex. 2 (identifying AT&T Mobility phone number) *with* Schultz Decl. Ex. 1 at 7:6-7 *and* FAC ¶ 10 (identifying number allegedly called by ERC).

AT&T Mobility's records reflect that the transaction was completed using the store's electronic signature-capture device, which displayed the text of the Wireless Customer Agreement in scrollable format. Dobbs Decl. ¶¶ 3-7. In order to complete the sale, Soppet would have had to scroll through or move ahead to the end of the Agreement, press the button on the screen labeled "Accept," and sign the device under the following acknowledgment:

> I have reviewed and agree to the rates, terms, and conditions for the wireless products and services described in the Wireless Customer Agreement (***including limitation of liability and arbitration provisions***) and the Customer Service Summary, both of which were made available to me prior to my signing. * * *

*Id.* ¶¶ 3, 7 & Ex. 3 (emphasis added); *see also* Cummings Decl. Ex. 3 (AT&T Mobility's record of Soppet's signature). Soppet also would have had the option of pressing the "Print" button on the device's screen to obtain a printed version of the Agreement. Dobbs Decl. ¶¶ 5-6 & Ex. 2 (authenticating printed version of Agreement).

The printed version of the Agreement itself highlights the arbitration provision near the outset: "**PLEASE READ THIS AGREEMENT CAREFULLY * * * THIS AGREEMENT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS ACTIONS, AND ALSO**

**LIMITS THE REMEDIES AVAILABLE TO YOU IN THE EVENT OF A DISPUTE.**" Dobbs Decl. Ex. 2 at 1 (emphasis in original).

The arbitration provision states that "[AT&T Mobility] and you agree to arbitrate **all disputes and claims** between us. This agreement to arbitrate is intended to be broadly interpreted." *Id.* Ex. 2 § 2.2(1) (emphasis in original). The provision also explains that the terms "us" includes AT&T Mobility's "affiliates." *Id.*[2] And the provision expressly states that it covers "claims that arose before this or any prior Agreement" with AT&T Mobility, including "claims that are currently the subject of purported class action litigation in which you are not a member of a certified class." *Id.* In addition, the provision specifies that "**YOU AND [AT&T MOBILITY] AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.**" *Id.* Ex. 2 § 2.2(6) (capitalization and emphasis in original).

**Loidy Tang**

According to AT&T Mobility's records, since October 19, 2011, the wireless phone number at which Tang allegedly had received calls from ERC has been associated with the AT&T Mobility account of Joe Kean Tang. Cummings Decl. ¶¶ 3, 5. Ms. Tang testified in her deposition that Joe Kean Tang is her husband. Schultz Decl. Ex. 2 at 78:21-24. AT&T Mobility's records reflect that on that date, Mr. Tang purchased an iPhone at an Apple retail store and activated it for use on AT&T Mobility's network using the 8483 phone number (*i.e.*, the one on which Loidy Tang allegedly had received calls from ERC). Cummings Decl. ¶ 5;

---

[2] The entire sentence defining "us" reads: "References to 'AT&T,' 'you,' and 'us' include our respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors and assigns, as well as all authorized or unauthorized users or beneficiaries of services or equipment under this or prior Agreements between us." Dobbs Decl. Ex. 2 § 2.2(1).

*compare id.* Ex. 4 (identifying AT&T Mobility phone number) *with* Schultz Decl. Ex. 2 at 13:5-10 *and* FAC ¶ 27 (identifying number allegedly called by ERC).

According to Apple's director of retail technology, to complete that transaction at the Apple store—which was one of four iPhone activations on his account—Mr. Tang would have had to click a box and sign his name on an EasyPay device in the store to indicate acceptance of AT&T Mobility's contract terms. Decl. of Roger Dicke ¶¶ 3-4 & Ex. 1; *see also id.* Exs. 2-5 (Apple's record of Mr. Tang's signatures). He also was provided with receipts stating: "I have agreed to the terms stated in the Wireless Customer Agreement, which was made available to me prior to my acceptance and which is available at http://www.att.com/iphoneterms. * * * If you are not fully satisfied with your iPhone purchase, you can return your undamaged iPhone within 30 days of purchase for a full refund with no restocking fee." *Id.* ¶ 5 & Exs. 6-9.

Mr. Tang's Wireless Customer Agreement contains an arbitration provision that is identical to the one in Soppet's Wireless Customer Agreement. *Compare* Probst Decl. Ex. 2 § 2.2 *with* Dobbs Decl. Ex. 2 § 2.2. The provision requires that the parties arbitrate "**all disputes and claims** between us," including "claims that arose before this or any prior Agreement" and "claims that are currently the subject of purported class action litigation in which you are not a member of a certified class." Probst Decl. Ex. 2 § 2.2(1). The provision also defines the term "us" to include AT&T Mobility's "affiliates" and "all authorized or unauthorized users or beneficiaries of services or Devices under this or prior Agreements between us." *Id.*

C.     **The Terms Of Plaintiffs' Arbitration Agreements.**

The arbitration provision in plaintiffs' Wireless Customer Agreements includes the following features that were designed to make arbitration easy and attractive for consumers (Dobbs Decl. Ex. 2 § 2.2; Probst Decl. Ex. 2 § 2.2):

- **Cost-free arbitration**: For claims up to $75,000, "[AT&T Mobility] will pay all [American Arbitration Association ('AAA')] filing, administration, and arbitrator fees" unless the arbitrator determines the customer's claim "is frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b))";[3]

- **$10,000 minimum award**: If the arbitrator issues an award in favor of a customer that is greater than "[AT&T Mobility]'s last written settlement offer made before an arbitrator was selected," AT&T Mobility will pay the customer $10,000 rather than any smaller arbitral award;

- **Double attorneys' fees**: If the arbitrator awards the customer more than AT&T Mobility's last written settlement offer made before an arbitrator was selected, then "[AT&T Mobility] will * * * pay [the customer's] attorney, if any, twice the amount of attorneys' fees, and reimburse any expenses (including expert witness fees and costs), that [the] attorney reasonably accrues for investigating, preparing, and pursuing [the] claim in arbitration";[4]

- **Small claims court option**: Either party may bring a claim in small claims court as an alternative to arbitration;

---

[3] Even if an arbitrator concludes that a customer's claim is frivolous, if the claim is for less than $10,000, the AAA's consumer arbitration rules would cap the amount of costs that the customer would have to pay at $125. *See* Decl. of Peter Bennett Ex. 1 (AAA, *Consumer-Related Disputes Supplementary Procedures* § C-8).

[4] The provision for double attorneys' fees "supplements any right to attorneys' fees and expenses [the customer] may have under applicable law." Dobbs Decl. Ex. 2 § 2.2(5); Probst Decl. Ex. 2 § 2.2(5). Thus, even if an arbitrator were to award a customer less than ATTM's last settlement offer, the customer would be entitled to an attorneys' fee award to the same extent as if her individual claim had been brought in court.

- **Flexible consumer procedures**: Arbitration will be conducted under the AAA's Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes, which the AAA designed with consumers in mind;

- **Choice of in-person, telephonic, or no hearing**: For claims of $10,000 or less, the customer has the exclusive right to choose whether the arbitrator will conduct an in-person hearing, a telephonic hearing, or a "desk" arbitration in which "the arbitration will be conducted solely on the basis of documents submitted to the arbitrator";

- **Conveniently located hearing**: Arbitration will take place "in the county * * * of [the customer's] billing address";

- **AT&T Mobility disclaims right to seek attorneys' fees**: "Although under some laws [AT&T Mobility] may have a right to an award of attorneys' fees and expenses if it prevails in an arbitration, [AT&T Mobility] agrees that it will not seek such an award";

- **No confidentiality requirement**: Either party may publicly disclose the arbitration and its result;

- **Full individual remedies available**: The arbitrator can award any form of relief on an individualized basis (including statutory and punitive damages, attorneys' fees, and injunctions that would affect the claimant alone) that a court could award; and

- **Right to written decision**: "Regardless of the manner in which the arbitration is conducted, the arbitrator shall issue a reasoned written decision sufficient to explain the essential findings and conclusions on which the award is based."

**ARGUMENT**

Plaintiffs' claims against AT&T Illinois are covered by the provision in their AT&T Mobility service agreements that requires them to arbitrate "**all disputes and claims** between you and us," including "claims that arose before this or any prior Agreement" with AT&T Mobility. Dobbs Decl. Ex. 2 § 2.2(1) (emphasis in original); Probst Decl. Ex. 2 § 2.2(1) (emphasis in original). The term "you" encompasses claims brought by Soppet as the signatory to her service agreement, as well as claims brought by Tang, who uses a phone line that is associated with Joe Kean Tang's account and therefore is a third-party beneficiary of his service agreement.[5] And the term "us" covers claims against not only AT&T Mobility, but also its "affiliate" AT&T Illinois—which shares common ownership with AT&T Mobility, because both are indirect, wholly-owned subsidiaries of AT&T Inc. *See* Decl. of Paula M. Phillips. ¶ 3.[6]

The FAA requires enforcement of these arbitration agreements. The Act applies to any arbitration agreement that is "written" and in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Both criteria are met here: (i) AT&T Mobility's arbitration provision is in writing (*see* pages 3-6, *supra*), and (ii) contracts for wireless and landline service involve interstate commerce, because "[i]t is well-established that telephones, even when used intrastate, are instrumentalities of interstate commerce." *United States v. Corum,* 362 F.3d 489, 493 (8th

---

[5] Under Illinois law, "[a] third-party beneficiary is bound by the terms of the contract"—including "arbitration agreements"—" in the same manner as the parties are bound." *Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, 882 N.E.2d 157, 180 (Ill. App. Ct. 2008) (internal quotation marks omitted). Moreover, the contract expressly provides that "all authorized and unauthorized users or beneficiaries of services or Devices"—such as plaintiff Tang—are required to arbitrate their claims. Probst Decl. Ex. 2 § 2.2(1).

[6] Black's Law Dictionary defines an "affiliate" as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." BLACK'S LAW DICTIONARY 67 (9th ed. 2009); *see also*, *e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) ("The plain and ordinary meaning of 'affiliate'" in a contract is "'a company * * * associated with others under common ownership or control.'") (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 35 (2002)).

Cir. 2004). Indeed, the arbitration provision in each plaintiff's wireless service agreement specifies that the agreement "evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision." Dobbs Decl. Ex. 2 2.2(1); Probst Decl. Ex. 2 § 2.2(1).

Under the FAA, plaintiffs' arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the Supreme Court has explained, "[t]he overarching purpose of the FAA * * * is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion*, 131 S. Ct. at 1748. And this "liberal federal policy favoring arbitration agreements" applies "notwithstanding any state substantive or procedural policies to the contrary." *Id.* at 1749 (internal quotation marks and citations omitted).

Here, no grounds "exist at law or in equity for the revocation of" (9 U.S.C. § 2) plaintiffs' arbitration agreements. Indeed, the Supreme Court recently reversed a Ninth Circuit decision that refused to enforce a materially equivalent version of AT&T Mobility's arbitration provision under California law. *See Concepcion*, *supra*. Significantly, the Court noted that "aggrieved customers who filed claims would be 'essentially guarantee[d]' to be made whole" under AT&T Mobility's arbitration provision. 113 S. Ct. at 1753 (quoting *Laster v. AT&T Mobility LLC*, 584 F.3d 849, 856 n.9 (9th Cir. 2009)) (alteration by the Supreme Court). It similarly agreed with the district court that the plaintiffs in that case arguably were "*better off under their arbitration agreement with AT&T than they would have been as participants in a class action.*" *Id.* (citing *Laster v. T-Mobile USA, Inc.*, 2008 WL 5216255, at *12 (S.D. Cal. Aug. 11, 2008)) (emphasis added by the Supreme Court). In the wake of *Concepcion*, numerous

courts have compelled arbitration of claims against AT&T Mobility or related entities under AT&T Mobility's arbitration provision.[7]

In short, Plaintiffs' arbitration agreements are enforceable as a matter of federal law. Accordingly, the claims against AT&T Illinois should be stayed and referred to arbitration. *See* 9 U.S.C. § 3 (providing for stay); *see also*, *e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (FAA "provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, § 3").

## CONCLUSION

The Court should compel arbitration of plaintiffs' claims against AT&T Illinois and stay further litigation of those claims pending the resolution of that arbitration.

---

[7] *See Cruz v. Cingular Wireless LLC*, 648 F.3d 1205, 1212-16 (11th Cir. 2011) (AT&T Mobility); *In re Apple iPhone 3G Prods. Liab. Litig.*, __ F. Supp. 2d __, 2012 WL 1622643, at *5 n.26 (N.D. Cal. May 9, 2012) (same); *Blau v. AT&T Mobility*, 2012 WL 10546, at *5 (N.D. Cal. Jan. 3, 2012) (AT&T Mobility and AT&T Inc.); *In re Apple & AT & TM Antitrust Litig.*, 826 F. Supp. 2d 1168, 1174-75 (N.D. Cal. 2011) (AT&T Mobility); *Hendricks v. AT&T Mobility, LLC*, 823 F.Supp.2d 1015, 1019-23 (N.D. Cal. Oct. 26, 2011) (same); *Kaltwasser v. AT&T Mobility LLC*, 812 F. Supp. 2d 1042, 1046-51 (N.D. Cal. 2011) (same); *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 2011 WL 2886407, at *3-*4 (N.D. Cal. July 19, 2011) (same); *Nelson v. AT&T Mobility LLC*, 2011 WL 3651153, at *2-*5 (N.D. Cal. Aug. 18, 2011) (same); *Boyer v. AT&T Mobility Servs., LLC*, 2011 WL 3047666, at *3 (S.D. Cal. July 25, 2011) (AT&T Mobility Services LLC); *see also Sherman v. AT&T Inc.*, 2012 WL 1021823, at *4 (N.D. Ill. Mar. 26, 2012) (Kendall, J.) (enforcing materially identical arbitration provision in AT&T residential Internet service contract against various AT&T entities); *Hancock v. Am. Tel. & Tel. Co.*, 804 F. Supp. 2d 1196, 1205 (W.D. Okla. 2011) (same, including with respect to claims against AT&T Illinois), *appeal pending*, No. 11-6233 (10th Cir.).

- 11 -

Dated: September 10, 2012

Respectfully submitted,

/s Archis A. Parasharami
Archis A. Parasharami
Kevin Ranlett (*pro hac vice*)
Mayer Brown LLP
1999 K Street, N.W.
Washington, DC 20006-1101
Tel: (202) 263-3000
Fax: (202) 263-3300
Email: aparasharami@mayerbrown.com;
kranlett@mayerbrown.com

*Attorneys for Defendant Illinois Bell Telephone Company d/b/a AT&T Illinois*