**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TERESA SOPPET, LOIDY TANG, individually and on behalf of a class, </br></br> Plaintiffs, </br></br> v. </br></br> ENHANCED RECOVERY COMPANY, LLC, as successor to ENHANCED RECOVERY CORPORATION and ILLINOIS BELL TELEPHONE COMPANY d/b/a AT&T ILLINOIS, </br></br> Defendants. | ) ) ) ) ) ) Case No. 1:10-cv-5469 ) ) ) Hon. Matthew Kennelly ) ) ) ) ) ) ) ) |

**DECLARATION OF JAMES K. SCHULTZ**

I, James K. Schultz, declare as follows:

1. I have personal knowledge of the following facts, and if called as a witness I could and would testify competently as to their truth.

2. I am an attorney with the law firm of Sessions, Fishman, Nathan & Israel LLP and counsel for defendant Enhanced Recovery Corporation.

3. On March 11, 2011, I took the deposition of plaintiff Teresa Soppet. Excerpts from a true and correct transcript of that deposition are attached as Exhibit 1. Digits from Ms. Soppet's phone number have been redacted from the transcript to protect her privacy.

4. On March 18, 2011, I took the deposition of plaintiff Loidy Tang. Excerpts from a true and correct transcript of that deposition are attached as Exhibit 2. Digits from Ms. Tang's phone number have been redacted from the transcript to protect her privacy.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed at Chicago, Illinois on September 7, 2012.

/s James K. Schultz
_____
James K. Schultz

# Exhibit 1

Teresa Soppet                                                       March 11, 2011

**Page 1**

```
        IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF ILLINOIS
                   EASTERN DIVISION

TERESA SOPPET, on behalf of      )
plaintiff and the class defined  )
below,                           )
          Plaintiff,             )
     vs.                         ) Case No. 10 CV 5469
ENHANCED RECOVERY CORPORATION,   )
          Defendant.             )
---------------------------------)
LOIDY TANG, individually and on  )
behalf of a class,               )
          Plaintiff,             )
     vs.                         ) Case No. 10 CV 6501
ENHANCED RECOVERY COMPANY, INC., )
          Defendant.             )
```

        The deposition of TERESA R. SOPPET,
called for examination, taken pursuant to the Federal
Rules of Civil Procedure of the United States District
Courts pertaining to the taking of depositions, taken
before LAURA KIENLEN, CSR No. 84-4153, a Notary Public

**Page 2**

within and for the County of Cook, State of Illinois,
and a Certified Shorthand Reporter of said state, at
Suite 1120, 55 West Monroe Street, Chicago, Illinois, on
the 11th day of March, A.D. 2011, at 1:10 p.m.

PRESENT:

    EDELMAN, COMBS, LATTURNER & GOODWIN, LLC,
    (120 South LaSalle Street, 18th Floor,
    Chicago, Illinois 60603,
    312-739-4200), by:
    MR. FRANCIS R. GREENE,
       appeared on behalf of plaintiff in Case
       No. 10 CV 5469;

    LAW OFFICES OF ALEXANDER H. BURKE,
    (155 North Michigan Avenue, Suite 9020,
    Chicago, Illinois 60601,
    312-729-5288), by:
    MR. ALEXANDER H. BURKE,
       appeared telephonically on behalf of
       Plaintiff in Case No. 10 CV 6501;

           (PRESENT, CONTINUED)

**Page 3**

(PRESENT:)
    SESSIONS FISHMAN NATHAN & ISRAEL LLP,
    (55 West Monroe Street, Suite 1120,
    Chicago, Illinois 60603,
    312-578-0990), by:
    MR. JAMES K. SCHULTZ,
       appeared on behalf of Defendant.




REPORTED BY: LAURA KIENLEN, CSR.
       Certificate No. 84-4153.

**Page 4**

1  (WHEREUPON, the witness was duly sworn.)
2      TERESA R. SOPPET,
3  a plaintiff witness herein, having been first duly
4  sworn, was examined and testified as follows:
5              EXAMINATION
6  BY MR. SCHULTZ:
7  Q.  Ma'am, could you please state your full name,
8  spelling your last name for the record?
9  A.  Teresa R. Soppet, S-o-p-p-e-t.
10     MR. SCHULTZ: Let the record reflect that this
11 is the deposition of Teresa Soppet taken in the case of
12 Soppet and Tang versus Enhanced Recovery pending in the
13 United States District Court for the Northern District
14 of Illinois. Today's deposition is being taken pursuant
15 to notice and by agreement of the parties.
16 BY MR. SCHULTZ:
17 Q.  Ms. Soppet, is it okay if I call you Teresa?
18 A.  Yes. That would be so much easier.
19 Q.  Is there any other name that you like to be
20 called?
21 A.  No --
22 Q.  Okay. I'm Jim.
23 A.  -- not anymore
24 Q.  Have you ever given a deposition before?

Teresa Soppet                                                    March 11, 2011

**Page 5**

1  A.  No.
2  Q.  I'm sure Francis has done an excellent job of
3  telling you what to expect here today, but I just want
4  to go over a few ground rules just so --
5  A.  Okay.  Fair enough.
6  Q.  -- we're all on the same page.  I'm going to
7  be asking you some questions today regarding the
8  lawsuit.  If at any point in time I ask you a question
9  that you don't understand, just let me know, and I'll
10 rephrase it for you.  Okay?
11 A.  Great.  Thanks.
12 Q.  One of the things we need to do is to give
13 out-loud answers, yeses and noes, rather than shakes of
14 the head or shakes of the finger, things like that, so
15 our court reporter here could take it down.  Okay?
16 A.  Yes.
17 Q.  One thing that I am very guilty of, and I'll
18 try to avoid -- and I'd ask that you try to avoid -- is
19 talking over each.  Try to let me ask my full question
20 before giving your answer, and then I'll try to let you
21 give as big an answer as you want before asking my next
22 question so, again, our reporter doesn't have to try to
23 take down things in stereo.
24 A.  Fair enough.

**Page 6**

1  Q.  And if at any point in time you need to take a
2  break, use the restroom, get some water, just let me
3  know.  We're not here in an endurance contest.  Okay?
4  A.  Okay.
5  Q.  Let's get started.
6      What's your address?
7  A.  My full address?
8  Q.  Yes.
9  A.  [redacted]
10
11 Q.  And is that a house?
12 A.  It's a townhouse.
13 Q.  Who do you live there with?
14 A.  My daughter.
15 Q.  How old is your daughter?
16 A.  Just turned 20 Monday.
17 Q.  And what's her name?
18 A.  Colleen.
19 Q.  Is there anybody else that lives there with
20 you guys?
21 A.  No.
22 Q.  How long have you lived there?
23 A.  Since '05.
24 Q.  Do you have a home phone?

**Page 7**

1  A.  I do.
2  Q.  What's your home phone?
3  A.  [redacted]
4  Q.  And then I take it you have a cell phone?
5  A.  I do.
6  Q.  What's your cell phone number?
7  A.  [redacted]2583.
8  Q.  Is that your only cell phone?
9  A.  It is.
10 Q.  Does Colleen have a cell phone?
11 A.  She does.
12 Q.  Do you pay for that?
13 A.  No.  Her dad does.
14 Q.  And what is your marital status?
15 A.  Divorced.  Single.
16 Q.  How long were you married?  Or let me strike
17 that.
18     How many times have you been married?
19 A.  Two.
20 Q.  When was your first marriage?
21 A.  '82.
22 Q.  And who were you married to then?
23 A.  Gary Soppet.
24 Q.  How long were you married to Gary?

**Page 8**

1  A.  Fourteen years.
2  Q.  And is Gary Colleen's father?
3  A.  He is.
4  Q.  And that marriage ended in divorce?
5  A.  It did.
6  Q.  Was that in Cook County, the divorce
7  proceedings?
8  A.  Yes.  Uh-huh.  Uh-huh.
9  Q.  Sorry.  And then you got married again at some
10 point in time?
11 A.  Yes.
12 Q.  And when was that?
13 A.  Got married in, I guess -- give me a minute --
14 maybe '08.
15 Q.  And who did you marry in '08?
16 A.  Rick Tattoni, T-a-t-t-o-n-i.
17 Q.  How long were you married to Rick?
18 A.  Maybe a year.
19 Q.  And that also ended in divorce?
20 A.  I'm thinking I'm giving you the correct
21 things.  But yes.
22 Q.  The dates aren't really too --
23 A.  Right.  Yes, it did end in divorce.
24 Q.  In Cook County as well?

Teresa Soppet                                                                                    March 11, 2011

**Page 13**

1  MR. GREENE: He's asking you what you reviewed
2  in preparation for your deposition today, what
3  documents.
4  BY MR. SCHULTZ:
5    Q.  If anything.
6    MR. GREENE: If anything.
7    THE WITNESS: Oh, well, we kind of looked over
8  everything.
9  BY MR. SCHULTZ:
10   Q.  Like what?
11   A.  All my filings.
12   Q.  So the various versions of the complaint you
13 looked at?
14   A.  Sure. Sure.
15   Q.  Okay. Anything else that you recall looking
16 at in preparation for your deposition?
17   A.  No.
18   Q.  Did you review the second amended complaint
19 before it was filed?
20   A.  No.
21   Q.  Did you review the first amended complaint
22 before it was filed?
23   A.  No.
24   Q.  Did you review the original complaint before

**Page 14**

1  it was filed?
2    A.  Yes.
3    Q.  Do you recall when you first reviewed that
4  complaint?
5    A.  I want to say July or August.
6    Q.  Did you have any input in the drafting of that
7  complaint?
8    A.  I don't really know if I had input. I know I
9  reviewed. I'm not sure if I suggested anything be
10 changed. To be honest, I don't really recall.
11   Q.  Was there anything in that complaint that you
12 felt was inaccurate or needed to be supplemented?
13   A.  Not that I recall.
14   Q.  Okay. And the complaint that's -- the second
15 amended complaint, except for the class definition, is
16 it your understanding that at least as it relates to
17 you, the complaints are really the same?
18   A.  Correct.
19   Q.  Okay. So factually, the facts in here we
20 don't have to go back and look at the first one?
21   A.  Correct, that's my understanding.
22   Q.  It's mine as well. I'm not trying to trick
23 you up on this one; and if I do, he'll yell at me.
24   A.  Yes, I'm sure he will.

**Page 15**

1    Q.  As we sit here today, is it fair to say that
2  the second amended complaint contains all of the claims
3  and allegations that you assert against ERC?
4    A.  Yes.
5    Q.  And you're not aware of any other claims that
6  you would like to see brought or intend to bring against
7  them?
8    A.  No.
9    Q.  Can you just describe for me what exactly it
10 is that you're alleging ERC did wrong?
11   A.  I'm alleging that they called my cellular
12 number, my cell phone, without my authorization,
13 repeatedly, using an automated dial-type service system,
14 and it's my understanding that under the Telephone
15 Consumers Protection Act, that's not really permitted.
16   Q.  Okay. Is there any other part of your claim
17 that you haven't talked about? I mean is it just about
18 the calls to your cell phone then?
19   A.  And it was not authorized.
20   Q.  Right.
21   A.  And it was automated, and it was, you know,
22 from an automatic dialer-type thing. There wasn't a
23 person there either.
24   Q.  Other than those calls, though, I mean as far

**Page 16**

1  as the substance of the calls, like there wasn't any
2  threats or any harassing conduct that they did? They
3  didn't yell at you or anything like that?
4    A.  No.
5    Q.  So it's just the fact that they were calling
6  you on your cell phone with that equipment without your
7  consent?
8    A.  Correct.
9    Q.  Okay. And it's your understanding and your
10 belief that that violates the Telephone Consumer
11 Protection Act or the TCPA, as I call it?
12   A.  Correct.
13   Q.  And you understand that you filed this case as
14 a class action?
15   A.  Yes.
16   Q.  What does a class action mean to you?
17   A.  Class action to me is to represent a group of
18 people that all have a common experience. In this case,
19 we've all been receiving calls unauthorized, using an
20 automatic dialer-type system. So, you know, we all have
21 something in common.
22   Q.  And why did you decide to sue on behalf of the
23 class?
24   A.  Well, because as I was getting them and

**29**
1  you?
2    A.  No.
3    Q.  And who is your current service provider?
4    A.  T-Mobile.
5    Q.  Did you have a cell phone prior to the time
6  you got your current number?
7    A.  Prior to that did I have one?
8    Q.  Yeah.
9    A.  Sure.
10   Q.  And what happened to make you change your cell
11 phones?
12   A.  Don't laugh, but my friend and I wanted the
13 pink flip when it first came out. It was a friend
14 package, and so we got it together. It was buy one, get
15 one free, so we got that. And then when our -- we
16 renewed the contract, we split it apart. I kept my
17 number; she kept hers obviously.
18   Q.  So when you got your pink flip phone, you had
19 to get a new number or the price of the phone --
20   A.  Right.
21   Q.  -- of getting the new number?
22   A.  Right. Go figure. See, I told you not to
23 laugh.
24   Q.  Okay. I don't want to put your whole cell

**30**
1  phone number in the record here, but would you mind
2  telling me the last four digits of that cell phone?
3    A.  The one I just gave you?
4    Q.  Yeah, your current cell phone, your T-Mobile
5  cell phone that you currently use.
6    A.  2583. But I gave it to you in the beginning
7  of this, the whole --
8    Q.  You did?
9    A.  Yeah. And my home phone number.
10   Q.  Okay. You're right. We'll just --
11   A.  So it's been splashed everywhere.
12   Q.  Well, we'll keep it out. We could -- we'll
13 redact it as necessary then. Because I usually try to
14 avoid asking that question.
15   A.  I'm going to have picketers in front of my
16 house now.
17   Q.  The 2583 number, is that the only number that
18 ERC is calling?
19   A.  Yes.
20   Q.  You haven't gotten any calls from them on your
21 home number?
22   A.  No.
23   Q.  And is there anybody else that uses that phone
24 besides you?

**31**
1    A.  No. Cannot actually.
2    Q.  Why not?
3    A.  Because it also gets my e-mail from my office,
4  so it's got to be secured.
5    Q.  Do you pay the bills on that phone?
6    A.  Yes, I do.
7    Q.  Your office doesn't pay for it?
8    A.  No.
9    Q.  That doesn't seem fair.
10   A.  It doesn't, does it? Tax deduction.
11   Q.  Is your cell phone your primary phone, or do
12 you still maintain your home phone as --
13   A.  I still have a home phone, too. I'm
14 old-fashioned, just in case.
15   Q.  Of the calls that you received from ERC, were
16 they always -- strike that. Let me try that again.
17     When you received a call from ERC, did
18 you always answer the phone, sometimes answer the phone,
19 never answer the phone? I mean how did you know that
20 they were the ones calling you?
21   A.  I knew they were calling me because they left
22 me messages, so they would leave messages on my cell
23 phone voice mail. And then once I heard the messages, I
24 made an effort to try to grab the call to answer it

**32**
1  maybe a few times.
2    Q.  Do you recall what would come up on your
3  Caller ID when you got a call from ERC; would it
4  identify ERC or the number it used then?
5    A.  I don't recall.
6    Q.  How many of the phone calls did you actually
7  answer where you picked it up and you heard the voice?
8    A.  A few, three, four. I don't really know to be
9  honest.
10   Q.  Somewhere between --
11   A.  That I actually physically answered, right.
12   Q.  So less than five, though, you think?
13   A.  I believe so.
14   Q.  And was the response you got when you
15 answered, say, these five or so calls always the same?
16   A.  They were exactly the same as the ones on my
17 voice mail as a matter of fact.
18   Q.  It was just a voice leaving a message?
19   A.  Like a machine because it never let me do
20 anything. It was just insane.
21   Q.  And to the best of your recollection, what was
22 the message that was either being left on your voice
23 mail or when you picked it up?
24   A.  It would say -- God, I'd have to like -- hi,

**Exhibit 2**

Loidy Tang                                                                                                              March 18, 2011

```
                    1
    IN THE UNITED STATES DISTRICT COURT
       NORTHERN DISTRICT OF ILLINOIS
              EASTERN DIVISION


TERESA SOPPET, on behalf of    )
plaintiff and the class        )
defined below,                 )
              Plaintiff,       )
         vs.                   ) No. 10 C 5469
ENHANCED RECOVERY              ) Judge Kennelly
CORPORATION,                   ) Magistrate Judge
              Defendant.       ) Denlow
_____)
LOIDY TANG, individually       )
and on behalf of a class,      )
         vs.                   ) No. 10 C 6501
ENHANCED RECOVERY COMPANY,     )
LLC,                           )
              Defendant.       )


         The deposition of LOIDY J. TANG, called
as a witness for examination, taken pursuant to
the Federal Rules of Civil Procedure of the United
States District Courts pertaining to the taking of
```

```
                    2
 1  depositions, taken before LORRAINE DUNN, a Notary
 2  Public within and for the County of Cook, State of
 3  Illinois, and a Certified Shorthand Reporter of
 4  said state, CSR No. 84-2024, at Suite 1120, 55
 5  West Monroe Street, Chicago, Illinois, on the 18th
 6  day of March, A.D. 2011, at 10:00 a.m.
 7
 8  APPEARANCES:
 9
10    WARNER LAW FIRM, LLC,
11    (155 North Michigan Avenue, Suite 560,
12    Chicago, Illinois 60601,
13    312-238-9820), by:
14    MR. CURTIS C. WARNER,
15    cwarner@warnerlawllc.com,
16       appeared on behalf of the Plaintiff;
17
18    SESSIONS FISHMAN NATHAN & ISRAEL, LLP,
19    (55 West Monroe Street, Suite 1120,
20    Chicago, Illinois 60603,
21    312-578-0990), by:
22    MR. JAMES K. SCHULTZ,
23       appeared on behalf of the Defendants.
24  REPORTED BY: LORRAINE DUNN, CSR No. 84-2024.
```

```
                    3
 1  MR. SCHULTZ: Go ahead and swear her in.
 2       (WHEREUPON, the witness was duly
 3       sworn.)
 4       LOIDY J. TANG,
 5  called as a witness herein, having been first duly
 6  sworn, was examined and testified as follows:
 7       EXAMINATION
 8  BY MR. SCHULTZ:
 9   Q.  Ma'am, could you please state your full
10  name, spelling your last name, for the record.
11   A.  Yes.  My full name is Loidy, middle
12  initial J, last name Tang, T-a-n-g.
13      MR. SCHULTZ: Let the record reflect that
14  this is the deposition of Loidy J. Tang being
15  taken in the case of Tang versus Enhanced Recovery
16  Company, LLC.  Today's deposition is being taken
17  pursuant to notice and by agreement of the
18  parties.
19  BY MR. SCHULTZ:
20   Q.  Ms. Tang, have you ever given a
21  deposition before?
22   A.  No.
23   Q.  I introduced myself a little bit
24  earlier.  My name is Jim Schultz and I represent
```

```
                    4
 1  the defendant, the company that you're suing in
 2  this case.  This is my opportunity to ask you some
 3  questions today about your case.
 4      Do you understand that?
 5   A.  Yes.
 6   Q.  I'm sure your attorney has probably
 7  explained this to you, but I am going to go
 8  through it just to make sure we're all on the same
 9  page.  We're here to have questions taken down by
10  the court reporter.  If at any point in time any
11  of my questions aren't clear to you, you don't
12  understand what I'm trying to ask you, just let me
13  know and I will rephrase it for you, okay?
14      Another thing I need you to do is give
15  verbal answers, yes and no rather than shakes of
16  the head, because our court reporter can't take
17  down the nod of the head or the finger you might
18  want to throw or something like that, okay?
19   A.  Yes.
20   Q.  One other thing, I'm just as guilty of
21  this as the next person, maybe even more so, but
22  if you can give me an opportunity to finish my
23  question before you give an answer and then I will
24  try to give you as much time to answer before
```



Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Loidy Tang                                                                                         March 18, 2011

```
                                                  13
 1   individually?
 2      Q.  Yes.
 3      A.  They called me without my consent.
 4   They called my cell phone.  I never gave consent.
 5      Q.  What phone number did they call you on?
 6      A.       8483.
 7      Q.  Are there any other numbers that they
 8   called you on besides that 8483 number?
 9      A.  That is my cell phone number,
10           8487.
11      Q.  87?
12      A.  Sorry, 8483.
13      Q.  Besides the 8483 number, though, did
14   they call you on any other numbers?
15      A.  No.  This is my cell phone.
16      Q.  They didn't call you at work?
17      A.  No.
18      Q.  Do you have -- strike that.
19          With the five people that live in your
20   house, is there any sort of family plan on your
21   cell phone contract or do you each -- or are there
22   other individuals in your family -- let me try it
23   again.
24          Do any other individuals in your
```

```
                                                  14
 1   household have cell phones?
 2      A.  Yes.
 3      Q.  Who is your cell phone carrier?
 4      A.  U.S. Cellular.
 5      Q.  Who else in your household has a cell
 6   phone?
 7      A.  My son, my daughter, my husband, my
 8   mother, but my mother is excluded from my plan.
 9      Q.  So the four of you, though, your
10   husband and your two children and you are all on
11   the same plan?
12      A.  Correct.
13      Q.  That is with U.S. Cellular?
14      A.  Correct.
15      Q.  When did you first get cellular service
16   through U.S. Cellular?
17      A.  I got service -- I've had this around
18   since I think it's January 2007.
19      Q.  At the time that you got service, the
20   date is not too important, approximately
21   January 2007 --
22      A.  Approximately.
23      Q.  That's fine.  At the time that you got
24   service in January 2007, did you get service just
```

```
                                                  15
 1   for yourself at that point or did you get for the
 2   four of you?
 3      A.  At that point, it was I believe it was
 4   for myself.
 5      Q.  When did you add on the other three, to
 6   the best of your recollection?
 7      A.  To the best of my recollection, when I
 8   met my husband.  I added him probably 2008.  Then
 9   when my son became ten years old, I gave it to him
10   as a gift.  So that was two years ago.  I can't be
11   specific on the date.
12      Q.  That's fine.
13      A.  And then my daughter, when she turned
14   nine -- eight.
15      Q.  They each have their own separate
16   numbers, correct?
17      A.  Correct.
18      Q.  Do you know if either your husband,
19   your son or your daughter received any calls from
20   ERC, Enhanced Recovery?  I call them ERC.
21      A.  I do not know whether they received
22   calls from ERC.
23      Q.  You don't know one way or the other?
24      A.  I don't know.
```

```
                                                  16
 1      Q.  At the time you opened your service
 2   with U.S. Cellular in approximately January
 3   of '07, did you obtain that 8483 number at that
 4   time?
 5      A.  Yes.
 6      Q.  Did you have the 8483 number before
 7   then?
 8      A.  I can't remember.
 9      Q.  At the time you got the service with
10   U.S. Cellular, did you have a cell phone with a
11   different company at that point?
12      A.  No.  It's always been U.S. Cellular.  I
13   think this is since -- it's been the same number.
14      Q.  So when you got the cell phone with
15   U.S. Cellular in about January of '07, was that
16   the first cell phone that you got?
17      A.  As far as the number, I can't recall.
18   I know I've had it for sure since 2008, the
19        8483.
20      Q.  I am going to call it 8483.
21      A.  Okay.
22      Q.  You're sure you had the 8483 number at
23   least as of 2008?
24      A.  Yes.  It would be reflected on my
```



Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Loidy Tang                                                                March 18, 2011

```
                                        77                                              79
 1    Q.   Just want to make it clear.  I know       1    Q.   Do you know why it is made to the
 2   what these transcripts are going to look like in 2   attention of him?
 3   the end.                                         3    A.   Yes, because U.S. Cellular doesn't have
 4         During the course of discovery, you       4   joint accounts and he wanted his name to be on
 5   produced to us a lot of phone records.          5   there, too.
 6    A.   There would be more but that's how long   6    Q.   Okay.
 7   the records are available.                      7    A.   But that's the only thing that they
 8    Q.   I wasn't planning on marking this but     8   could do.
 9   on the record I'm looking here at a bill from   9    Q.   Just curious.  Okay.  I'm sorry, what
10   November 2nd, 2010 and --                      10   date did you say you moved?
11    A.   Oh, my God.                              11    A.   Physically left the town home on the
12    Q.   I'm not going to go over this very       12   11th.  On paper, my lease begins March 15th.
13   much.  I don't want to even read the numbers or 13   MR. SCHULTZ:  Would you mark this as Exhibit
14   anything but are these the four cell phone numbers 14 No. 3, please.
15   that are related to your cell phone account with 15       (WHEREUPON, said document was
16   U.S. Cellular?                                 16        marked Tang Deposition Exhibit
17    A.   Yes.                                     17        No. 3, for identification, as of
18    Q.   Just for the record, that is on Tang     18        3/18/11.)
19   458 under the cellular telephone number summary of 19 BY MR. SCHULTZ:
20   totals.  Those are the four accounts?          20    Q.   I'm going to hand you what we've marked
21    A.   Uh-huh.                                  21   as Exhibit No. 3, Ms. Tang.
22    Q.   That would be you, your husband, and     22        Have you ever seen that document
23   your two children?                             23   before?
24    A.   Right, but I'm the primary account       24    A.   My lawyer has e-mailed me documents.
                                        78                                              80
 1   holder.                                         1    Q.   So does that look like a document
 2    Q.   What is ▓▓▓▓▓▓▓▓▓▓▓▓                      2   you've seen before?
 3   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓?                             3    A.   Yes.
 4    A.   I just moved.                             4    Q.   I just want to -- in Section B here,
 5    Q.   Is that a prior residence?                5   you identify that you have copies of prerecorded
 6    A.   Yes.                                      6   communications from defendant?
 7    Q.   When did you move?                        7    A.   Yes.
 8    A.   I moved -- my lease began on the 15th,    8    Q.   That just means you have copies of the
 9   but I physically moved on the 11th of this month. 9 messages that were left?
10    Q.   Of March?                                10    A.   Voice messages, and they were
11    A.   Uh-huh.                                  11   transcribed.
12    Q.   And your prior address was ▓▓▓           12    Q.   About how many of those messages do you
13   ▓▓▓▓▓▓▓▓▓▓▓▓▓?                                 13   have?
14    A.   Correct.                                 14    A.   There's about I think it's about 13 or
15    Q.   ▓▓▓▓▓▓▓▓?                                15   more or less, I'm not sure.
16    A.   Uh-huh.                                  16    Q.   There's about 13 messages, though, from
17    Q.   Yes?                                     17   ERC?
18    A.   Yes.                                     18    A.   Yes, or more, I'm not sure.
19    Q.   Is that an apartment complex?            19    Q.   And those were all -- those have all
20    A.   It is a town home.                       20   been preserved, your attorney has those or you
21    Q.   And your cell phone, the bills you       21   have those?
22   produced, they have your name and attention Joe 22    A.   I forwarded it.
23   Kean Tang?                                     23   MR. SCHULTZ:  Are those the messages?
24    A.   That is my husband.                      24   MR. WARNER:  Yes.  For the record, we do have
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com